CITY OF OREGON *v.* DANSACK, MAYOR.

[Cite as *Oregon v. Dansack* (1993), 68 Ohio St.3d 1.]

(No. 92–2446—Submitted August 16, 1993—Decided December 8, 1993.)

*Reminger & Reminger Co., L.P.A.,* and *Nick C. Tomino,* for relator.

*Newcomer & McCarter* and *C. Thomas McCarter,* for respondent.

*Per Curiam.* We grant respondent's motion for summary judgment and deny the writ for the following reasons.

I

Authority to Adopt the Ordinance

Relator alleges that city council has authority under the city charter to approve contracts, and the mayor has the duty to execute them. Respondent argues that he has the authority under the charter to "evaluate and discipline" members of the police department and that the proposed contract is an attempt by council to exert authority in this area in which it has no power.

Section 8, Article III of the Charter of the city of Oregon states in part:

"The Council shall have and possess:

"(a) All of the legislative powers of the City as may now or hereafter may be granted by the Constitution and laws of Ohio to legislative bodies of municipalities, and such other powers as may be granted by this Charter and as are now or may hereafter be granted by the laws of Ohio to Boards of Control, Municipal Tax Commissions, Boards of Trustees of Public Affairs, Boards of Cemetery Trustees, Recreation Boards, or any other municipal commission, board or body now or hereafter created by law, except as otherwise provided by the Constitution of Ohio or this Charter."

This obviously confers broad powers on city council. In *State ex rel. Holloway v. Rhodes* (App.1940), 33 Ohio Law Abs. 26, 35 N.E.2d 987, the Court of Appeals for Franklin County considered a similar problem. There, city council had authorized a contract for the investigation of gas-rate expenditures. The investigator sought to compel payment of his fee, and the city auditor refused payment on grounds that council lacked authority to employ such an investigator. The auditor argued, in part, that a state statute precluded such employment. The statute stated in part that council could "neither appoint nor confirm any officer or employee in the city government except those of its own body * * *." G.C. 4211. The court, however, found that this statute should be read in conjunction with G.C. 4210, which provided in part that members of council, within ten days from the commencement of their term, should elect officers and other council employees. The court concluded that the ten-day provision was directory, not mandatory, and further stated:

"Regardless of legislation, the city council has an inherent power to make full and complete investigation on any matter coming within their operative function, whether in contemplation of future legislation or not. Where the nature of the investigation is such that the council needs competent or expert services in aiding them in determining their official duty, there should be no question that council has the inherent right to make such employment." *Id.* at 30, 35 N.E.2d at 990.

In the instant case, Section 8(a), Article III of the charter grants council the broadest authority possible under state law, except as restricted by the charter itself. The only potentially restrictive parts of the charter are the clauses in Section 6 of Article IV, which provide that the mayor "shall exercise control of all departments and divisions," and that he has the authority to appoint, discipline and remove employees, "subject to confirmation by a majority of the members of Council." Such passages do not appear inconsistent with council's appointing its own investigator. R.C. 731.04, the successor to G.C. 4210, still provides that a city council may "elect" such employees as are necessary, and R.C. 705.21 authorizes investigations by council. Moreover, to the extent that discipline or removal of employees might become involved, Section 6, Article IV of the Oregon Charter gives council approval power over such an action by the mayor, from

which a right to conduct its own investigation may be implied. Otherwise, the charter appears silent on matters of investigation.

Accordingly, we conclude in this case that the legislative authority of council includes the power to investigate and to appoint employees to conduct the investigation in question.

## II

### Compliance with R.C. 5705.41 and Lapse of Appropriation

Respondent argues in support of his motion for summary judgment that council failed to comply with R.C. 5705.41. When relator attempts to establish compliance in its response to the motion, via affidavit of the city clerk-auditor, respondent argues that the evidence shows that the funds have lapsed. This latter argument has merit.

R.C. 5705.41 provides in part:

"No subdivision or taxing unit shall:

" * * *

"(B) Make any expenditure of money unless it has been appropriated as provided in such chapter [R.C. Chapter 5705];

"(C) Make any expenditure of money except by a proper warrant drawn against an appropriate fund;

"(D) * * * make any contract or give any order involving the expenditure of money unless there is attached thereto a certificate of the fiscal officer of the subdivision that the amount required to meet the obligation or, in the case of a continuing contract to be performed in whole or in part in an ensuing fiscal year, the amount required to meet the obligation in the fiscal year in which the contract is made, has been lawfully appropriated for such purpose and is in the treasury or in process of collection to the credit of an appropriate fund free from any previous encumbrances. * * * "

Respondent also cites Section 8(e), Article III of the city charter, which states in part:

"No contract shall be made on behalf of the City unless first authorized by Council, and no contract shall be binding upon the City until it has first been authorized or approved and the necessary money has been lawfully appropriated therefor * * *."

Respondent cites the absence of any appropriation as evidence of the lack of a clear duty on his part to execute the contract. However, relator presents evidence in the form of an affidavit of the clerk-auditor, the city's fiscal officer, dated February 5, 1993, averring that funds were appropriated and available in a

professional services account and that she issued a purchase order to encumber the funds to pay Hayes under Ordinance No. 143–1992. Relator also presents a copy of the purchase order, dated December 30, 1992, and a copy of the appropriation, effective December 30, 1991 for the period January 1, 1992 through December 31, 1992.

Respondent nevertheless argues that the appropriation has lapsed and is insufficient evidence of a clear duty to act. He appears to be technically correct. In *Trumbull Cty. Bd. of Edn. v. State ex rel. Van Wye* (1930), 122 Ohio St. 247, 171 N.E. 241, paragraph three of the syllabus, we held, regarding mandamus, that a court is not limited to considering facts and circumstances at the time a proceeding is instituted, but should consider the facts and conditions at the time it determines whether to issue a peremptory writ. There is currently no evidence of an unencumbered appropriation before the court. The only evidence is of a presumably valid appropriation for the calendar year 1992 that has clearly ended. Accordingly, the writ is denied on this technical failure to present evidence.

If a *current*, similar appropriation is available in fact, then the respondent would have a duty to execute the contract. Under Section 6, Article IV of the charter, the mayor and clerk-auditor have the duty to execute city contracts. This would include the duty to encumber a valid appropriation if one were available in fact. Thus, the mayor could not avoid his duty to execute the contract outside the mandamus context on the ground that no appropriation has been identified or encumbered. It is his and the clerk-auditor's duty to identify and encumber the appropriation if this can lawfully be done. However, in this case, relator has failed to prove the existence of a current appropriation and thus fails to establish a clear right to relief.

Accordingly, we grant respondent's motion for summary judgment and deny the writ.

*Writ denied.*

MOYER, C.J., A.W. SWEENEY, DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.